David HUFFMAN, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, The Department of Offender Rehabilitation, et al., Respondents.

No. 80–5237.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 20, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 9, 1981.

David Huffman, pro se.

Claude H. Tison, Jr., Tampa, Fla., for petitioner.

Jim Smith, Atty. Gen., Tallahassee, Fla., Michael A. Palecki, Michael J. Kotler, Asst. Attys. Gen., Tampa, Fla., for respondents.

Before TUTTLE, RONEY and VANCE, Circuit Judges.

PER CURIAM:

David Huffman was probably convicted by an unconstitutionally selected jury. At issue on this appeal is whether the federal courts are barred from reviewing Huffman's conviction in habeas corpus proceedings under the law governing waiver as stated in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and cases of this Circuit. Because the record is not sufficient on certain determinative points, we reverse and remand the denial of habeas corpus relief for the district court to hold an evidentiary hearing and determine

(1) whether there was an adequate challenge to the jury venire before trial; (2) whether the challenge was waived on the state appeal; (3) whether, if the challenge was inadequate, there was cause for the failure to challenge; and (4) if so, whether prejudice resulted from the asserted constitutional defect. Undergirding habeas corpus relief, of course, would be a decision that Huffman's jury venire was drawn in the same manner found unconstitutional in *Jordan v. State*, 293 So.2d 131 (Fla.App. 1974).

Huffman was convicted by a Sarasota County, Florida jury in 1972 on charges of rape and breaking and entering with intent to commit a felony. He petitioned the district court for a writ of habeas corpus alleging that blacks were systematically excluded from the jury venire thereby depriving him of his right to trial by an impartial jury chosen from a representative cross section of the community. The district court denied the petition for the reason that Huffman had failed to raise this claim on direct appeal and had therefore waived his right to litigate the issue in a federal habeas corpus proceeding.

■ The law is clear. Even if Huffman's jury was unconstitutionally selected, that fact alone will not invalidate his conviction if he accepted the jury without making the proper constitutional challenge. *See Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Evans v. Maggio*, 557 F.2d 430 (5th Cir. 1977); *Marlin v. Florida*, 489 F.2d 702 (5th Cir. 1974); *Rivera v. Wainwright*, 488 F.2d 275 (5th Cir. 1974). A defendant's failure to comply with established state procedures can cause him to waive his right to complain about a constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The state can restrict the time within which the constitutional attack must be made, after which the defendant will be deemed as a matter of law to have waived his right to attack the defect, or, in other words, the defendant will be deemed to have accepted the jury. *See Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979).

■ An exception to this waiver-by-failure-to-challenge rule exists, however, where the failure was for cause and the defendant can show that prejudice resulted from the constitutional defect and affected his conviction. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Jiminez v. Estelle*, 557 F.2d 506 (5th Cir. 1977). The application of this "cause and prejudice" exception to the present case is discussed in detail below.

The first question always in this kind of case is whether the defendant did in fact sufficiently challenge the jury venire within the time required. Uncertainty here is present because although the attorney did timely question the all-white jury venire, he did not pursue it, and there is some question whether his challenge was specific enough for Florida law.

A concededly timely challenge was made to the trial court by an oral motion to strike the panel, after the jury panel was selected by the jury commissioners but before the jurors for Huffman were called. Defense counsel noted the defendant was black, the rape victim was white, and the entire panel was white. He noticed the same characteristics of the jury panel two weeks prior while preparing for another trial. He offered to interrogate the jury commissioners to determine whether there was systematic exclusion of blacks from juries in Sarasota County. He wanted the selection of the jury reserved as a question for purposes of the record. He said he had not filed a written motion because it was not until that day that he had seen the jury panel.

The prosecutor noted that the proper means for making the challenge was by written motion setting forth the grounds and facts upon which the challenge is made. He indicated that any inherent prejudice, bias, or feelings of racial enmity could be brought out during the voir dire examination.

The court asked if the defense counsel would like to question the Supervisor of Elections, indicating that "she can speak for them for your record." Huffman's attorney refused, saying he knew that the Supervisor would say "that they are extracted from the voting rolls without imputing anything to color." The court agreed that it was sure that would be the case. Counsel said he was prepared to proceed with the understanding that he had placed on the record that the jury panel was white. Florida Rule of Criminal Procedure 3.290 requires that: "A challenge to the panel shall be in writing and shall specify the facts constituting the ground of the challenge."

The Florida Supreme Court in *Dykman v. State*, 294 So.2d 633 (Fla. 1973), and *Rojas v. State*, 288 So.2d 234 (Fla. 1973), stated that before a court is required to permit an investigation of its jury pool there must be a sufficient factual showing to raise reasonable suspicion that the panel was improperly drawn. An allegation that the jury panel is white in a trial involving a black person is an insufficient factual showing standing alone. *See Reliford v. State*, 241 So.2d 871 (Fla.App.1970). If Huffman's challenge to the jury venire was inadequate, he waived the defect of the improper jury venire by proceeding to trial. *State v. Silva*, 259 So.2d 153 (Fla. 1972); *Johnson v. State*, 268 So.2d 544 (Fla.Dist.Ct.App.1972). The only way for Huffman to obtain relief from his waiver would then be to show cause for the waiver and prejudice affecting the conviction. *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

Even if counsel did not comply with the requirements of Florida Rule of Criminal Procedure 3.290, he thought he had made an adequate challenge. Huffman's attorney made it clear he wanted the question reserved. It is doubtful that either counsel could have shown at that time the method of jury selection later found to be unconstitutional. The district court must determine whether under these circumstances Huffman sufficiently complied with the Florida procedural rule.

A second question as to waiver involves the appeal. A defendant can waive a defect by failing to assert the point on appeal. *State v. Matera*, 266 So.2d 661 (Fla. 1972); *Burau v. State*, 353 So.2d 1183 (Fla.App.1977). Huffman was permitted an appeal only after filing a *pro se* motion for relief since his initial court-appointed attorney failed to perfect a timely appeal. Huffman was represented on appeal by counsel from the same public defender's office that was handling the *Jordan* case which successfully challenged the method of choosing the jury venire in Sarasota County. For reasons not shown in the record, Huffman's attorney did not raise the jury challenge on appeal. In any event, however, Huffman may obtain relief from his failure to challenge at trial or on appeal if he can show cause and prejudice.

Whether Huffman may show prejudice so as to meet the second requirement of the exception of *Sykes* appears to pose little difficulty. Huffman was a black man accused of raping a white woman. A mixed-race jury might clearly have a special perception in a mixed-race case. His defense was consent. His jury was all white. Although a constitutionally drawn jury may well be all white, or all black, depriving Huffman of the chance of having a mixed-race jury would seem to meet the prejudice requirements for relief. *Cf. Rosales-Lopez v. United States*, —— U.S. ——, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981). We, of course, have not examined the evidence to see whether it might defeat the claim of prejudice, this being the job of the district court.

In determining the existence of prejudice, this Court has looked to see if the case had racial or sexual overtones, *see Evans v. Maggio*, 557 F.2d 430 (5th Cir. 1977); *Wells v. Wainwright*, 488 F.2d 522 (5th Cir. 1973), and what effect a timely objection might have had on the community and the defendant's chances to obtain a fair trial, *see Wells v. Wainwright*, 488 F.2d 522 (5th Cir. 1973). Before Huffman would be entitled to any relief, the district court would

have to find Huffman had been prejudiced by the constitutional defect.

Discovering the existence of cause demands a more complex inquiry. The Supreme Court has deliberately refrained from defining "cause and prejudice." *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. In establishing the contours of the "cause" exception, we must therefore look to the reasoning underlying the holding of *Sykes*. One of the major concerns expressed by the Court was to eliminate "sandbagging" by defense lawyers who consciously chose to raise constitutional claims for the first time in a federal habeas proceeding. *Id.* at 89–90, 97 S.Ct. at 2507–08. The Court believed that its holding would "have the salutary effect of making the state trial on the merits the 'main event' ...." *Id.* at 90, 97 S.Ct. at 2508.

While seeking to promote goals of efficiency and finality, the Court reaffirmed the traditional role of the habeas writ as an instrument of justice. The Court stated its conviction that

> [t]he "cause"-and-"prejudice" exception of the *Francis* rule will afford an adequate guarantee ... that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice.

433 U.S. at 90–91, 97 S.Ct. at 2508–09.

This Circuit has adhered to the philosophy expressed by the Court by defining "cause" sufficient to excuse a procedural default in light of the determination to avoid "a miscarriage of justice." *See e. g., Sincox v. United States*, 571 F.2d 876, 880 (5th Cir. 1978); *Jiminez v. Estelle*, 557 F.2d 506, 510–11 (5th Cir. 1977). In *Harris v. Spears*, 606 F.2d 639 (5th Cir. 1979), we stated that the definition of cause must encompass the goal of securing justice and the interest against sandbagging. We held that the issue of adequate cause "turns on whether a finding of cause safeguards against a 'miscarriage of justice' ... and whether it can be presumed that no strate-gic advantage can be gained from failure to comply with the procedural rule." *Id.* at 644 (citations omitted).

■ In defining cause, this Court has thus attempted to secure defendants who have not strategically withheld constitutional objections in state court proceedings from the possibility of injustice. To some extent we have therefore tended to view cause in terms of the nature of the procedural waiver and with an eye to the possible resulting prejudice. The appreciation that cause and prejudice under *Sykes* are sometimes interrelated is reflected in the decisions of other courts as well. *See* Goodman & Sallett, *Wainwright v. Sykes: The Lower Federal Courts Respond*, 30 Hastings L.Rev. 1683, 1722 (1979) and cases cited therein. This approach draws support from the concern of the *Sykes* majority to avoid a miscarriage of justice and from the analysis offered in the concurring opinion of Justice Stevens:

> [I]f the constitutional issue is sufficiently grave, even an express waiver by the defendant himself may sometimes be excused. Matters such as the competence of counsel, the procedural context in which the asserted waiver occurred, the character of the constitutional right at stake, and the overall fairness of the entire proceeding, may be more significant than the language of the test the Court purports to apply.

433 U.S. at 95–96, 97 S.Ct. at 2510–11 (footnote omitted). *See Rinehart v. Brewer*, 561 F.2d 126, 130 n.6 (8th Cir. 1977) (applying the factors suggested by Justice Stevens to find a showing of cause and prejudice). *See also* Hill, *The Forfeiture of Constitutional Rights in Criminal Cases*, 78 Colum.L. Rev. 1050, 1076 (1978) (suggesting factors to be taken into account in disallowing procedural default to avoid a miscarriage of justice). We also note that the Supreme Court has indicated the interrelationship of cause and prejudice under present Federal Rule of Criminal Procedure 12(f) in *Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 363, 83 S.Ct. 448, 461, 9 L.Ed.2d 357 (1963).

While the determination of cause and prejudice is properly left to the district court, the limited record before us indicates that this case may involve a grave miscarriage of justice if it is established that Huffman was indeed convicted by an unconstitutionally selected jury and that no objection concerning the jury venire was withheld for strategic reasons. The constitutional right at stake was fundamental, and the prejudice was potentially great. This is not a case, moreover, where a petitioner failed to call the court's attention to the alleged violation of his rights: Huffman's attorney raised the jury selection issue at trial and the court denied his request to examine the jury commissioners. If Huffman has deliberately been deprived of a constitutional right and has been unable to procure information about this deprivation, due weight should be given to this fact. *Cf. Freeman v. Georgia*, 599 F.2d 65, 72 (5th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980) (state cannot successfully argue that defendant waived right to request evidence when police statement misled defense into believing evidence to be unfavorable); *White v. Estelle*, 566 F.2d 500, 501 n.1 (5th Cir. 1978) (state cannot successfully claim procedural default when "the action of the state court itself made necessary the procedural default that occurred"). Regarding the failure to raise the issue of jury selection on appeal, the observations noted above as to the character of the right involved and the possible prejudice incurred are applicable here as well. The district court should also consider the fact that Huffman was represented on appeal by a lawyer from the public defender's office that had just handled *Jordan v. State*. Additionally, it should consider any difficulty experienced by Huffman in obtaining counsel to represent him on appeal. Such considerations are relevant to determining whether he received inadequate representation constituting cause under *Sykes*. *Cf. Sincox v. United States*, 571 F.2d at 879–80 (counsel's failure to protect two fundamental rights constituted cause); *Jiminez v. Estelle*, 557 F.2d at 510–11 (suggesting cause exists when counsel incompetently ignores valid grounds for objection or does not comprehend their importance); *Rachel v. Bordenkircher*, 590 F.2d 200, 204 (6th Cir. 1978) (cause exists when failure to make timely objections stems from inexperience, inattention or lack of knowledge of the law); *Collins v. Auger*, 577 F.2d 1107, 1110 n.2 (8th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 291, 58 L.Ed.2d 264 (1979) (lack of knowledge of facts or law constitutes cause for failure to object). Finally, if the objection at trial was waived for cause and counsel was deterred from raising the objection on appeal in consequence, the waiver on appeal will also be for cause.

A fundamental question, of course, is whether Huffman's jury venire was drawn in the same manner declared to be unconstitutional in *Jordan v. State*, 293 So.2d 131 (Fla.App.1974). Both time and place so indicate. Huffman and Jordan were tried on criminal charges in the Circuit Court for Sarasota County. Huffman was tried on November 28, 1972; Jordan was tried two months later, beginning January 30, 1973. The court in *Jordan* determined the jury commissioners in Sarasota County had unconstitutionally used subjective judgment rather than objective criteria in choosing the precincts from which jurors should be drawn. The use of the precincts was held to be constitutionally improper since the selection for the venire must come from the entire county and not some political sub-unit to the exclusion of others. It has never been determined, however, that Huffman's jury venire suffered the same constitutional defects. The district court should make such a determination before it considers any constitutional relief from the conviction.

In remanding the case for further proceedings, we are mindful that a state court held the Sarasota County jury selection method unconstitutional. The same state public defender's office which represented Huffman on appeal handled that case. When Huffman collaterally attacked his conviction under Florida Rule of Criminal Procedure 3.290 on the basis of the improp-

er jury venire, the Florida Supreme Court dismissed his petition for a writ of certiorari for lack of jurisdiction. *Huffman v. State*, 350 So.2d 5 (Fla. 1977). The court apparently found no conflict between the decision in *Jordan* where the defendant had made a prima facie showing of improper jury venire selection and the decision in *Huffman* in which there had been no prima facie showing. *See* Fla.Const. art. V, § 3(b)(3) (1972). The dissenting opinions in the Florida Supreme Court clearly indicate that if Huffman's petition had been treated as a habeas corpus petition, Huffman might have received relief in the state court.

The United States Supreme Court then denied Huffman's certiorari petition appealing from the Florida court's dismissal of his petition. *Huffman v. Florida*, 435 U.S. 1014, 98 S.Ct. 1888, 56 L.Ed.2d 395 (1978). Justice Stevens in his concurring opinion indicated that state review had been exhausted but that Huffman's federal claim remained open for review in a federal habeas corpus proceeding. 435 U.S. at 1017, 98 S.Ct. at 1890.

With this procedural background, plaintiff brought his federal habeas corpus proceeding. Because the record before us is incomplete, it is appropriate that the case be remanded to the district court to make the necessary legal and factual determinations under the law as stated in *Sykes* and its progeny. We emphasize, however, that the rule of *Sykes* is not a mechanical one. It was intended to avoid manipulation of the court system without sacrificing its ability to do justice. If Huffman was prejudicially deprived of a constitutionally selected jury, it is difficult to understand on the basis of the facts presented on this appeal how the purposes of the rule will be served by a refusal to vindicate his fundamental rights.

REVERSED AND REMANDED.